### KLEIN v. GALLIN et al.

(Supreme Court, Appellate Division, Second Department.    January 21, 1910.)

1. **FRAUDULENT CONVEYANCES (§ 101\*)—PAYMENTS TO RELATIVES—INFERENCE OF FRAUD.**

   While payment to relatives or near friends of an alleged indebtedness by a person in failing circumstances requires grave scrutiny, such acts do not justify an inference of fraud.

   [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 329; Dec. Dig. § 101.\*]

2. **FRAUDULENT CONVEYANCES (§ 295\*)—EVIDENCE.**

   Evidence *held* not to show that a purchase from a grantor in failing circumstances was fraudulent, or that a mortgage, given as part of the consideration, executed to an alleged creditor of the grantor, constituted fraud of the creditor.

   [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 867–875; Dec. Dig. § 295.\*]

3. **FRAUDULENT CONVEYANCES (§ 295\*)—EVIDENCE.**

   Evidence *held* to show a conveyance by a bankrupt fraudulent, so that a subsequent grantee should be compelled to account to the insolvent's trustee in bankruptcy for $1,200 profits of the sale of the property conveyed, with interest.

   [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 867–875; Dec. Dig. § 295.\*]

Appeal from Special Term, Kings County.

Action by John Klein, trustee in bankruptcy of Samuel Gallin, against Samuel Gallin and others. Judgment for plaintiff, and defendants appeal. Affirmed as to certain defendants; reversed, and new trial ordered, as to others.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

Robert H. Elder (Isaac Miller, on the brief), for appellants.
Louis J. Altkrug, for respondent.

THOMAS, J. At the time of the attacked conveyances, Samuel Gallin was in failing circumstances; and in the fall thereafter, to wit, on September 12, 1908, he filed a petition in bankruptcy, showing indebtedness amounting to about $10,000. On February 26, 1908, by deed recorded on the following day, he and his wife conveyed to the defendant Grossman property consisting of tenements over stores located at the corner of Moore and Leonard streets, with a frontage of 25 feet on Moore street and extending 98 feet 9 inches on Leonard street. The property is known as 13 Moore street. The stated consideration was $100, subject to a $28,000 mortgage, and also to a second mortgage of $3,000 executed simultaneously with the deed and forming a part of the consideration thereof. Gallin received actually, it is shown, $2,000

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in cash, but by arrangement the $3,000 mortgage was executed to the defendant Goldfisch in alleged discharge of a claim for plumbing for $3,500, on which there was unpaid $3,000. Goldfisch was the brother-in-law of Gallin, and will be later considered. By deed dated on the same day as the above Gallin and his wife conveyed to Grossman the premises at 17 Moore street, 25x100, for $11,000, $10,000 of which was met by assuming a mortgage of $10,000 on the premises, and the balance was paid in cash.

Whatever may be said of the fraudulent intent of Gallin, I find no sufficient evidence of such intent on the part of Grossman, unless it may be inferred from the fact that he kept the money in the house and paid in cash, or from an implication that he was buying from a man in straitened or failing circumstances at prices less than the values of the properties. It also appears that Gallin and Grossman lost or destroyed, not only the preliminary contracts in reference to 13 and 17 Moore street, but the closing statements, so that the deed alone remains. This may be some evidence of fraud, but it is very slight. Of what use are the contract and closing statements after the transaction is closed? Upon the trial Grossman said that he would take $13,000 for 17 Moore street, and the counsel for the plaintiff stated:

"We will take it right now for the benefit of creditors."

Grossman also stated:

"I will take for that corner $35,000.
"Mr. Altkrug (Plaintiff's Counsel): We will make a contract to close it right away.
. "By the Court: Q. You say you will sell it for $35,000? A. Well, for thirty-five— I must ask my wife about it."

Nothing further was done looking to this disposition of the matter. The plaintiff gave evidence that both before the time of sale and at the time of sale the property at 13 Moore street was worth $50,000. Ballisen fixes the value, in January and February, 1908, at from $52,000 to $53,000. Konverser fixes the value in February, 1908, at $55,000. This last witness testifies that in February 1908, he submitted offers to Gallin twice, one of $45,000 and one of $50,000, and that Gallin rejected $50,000, 10 per cent. cash. The witness Levy stated, "I value this house at $50,000," and he says he offered that for it in August, 1907. He states that the market went down some after the crisis in 1907. Ballisen states that in February, 1908, No. 17 Moore street was worth between $20,000 and $24,000. Such valuation disputes even Konverser, called for plaintiff, who places the value of 17 Moore street at only from $16,000 to $17,000; and as Ballisen himself went into bankruptcy from dealing in real estate, his judgment is of lessened value.

On the part of the defendants there are several witnesses who testified that the value of these houses was practically that paid by Grossman. I see no justification for holding that the purchase by Grossman was fraudulent, except that, as claimed and probably found, he got the property for less than it was worth; but considering the depression in values and the difficulty of obtaining money for investment, it would

seem that the inadequacy of price was not sufficient to give him notice that the property was being sold in fraud of the grantor's creditors.

The payment of the $3,000 mortgage to Goldfisch is urged as fraudulent. He did the plumbing work at 13 Moore street, as he claims. He had no records of the transaction, and stated that the contract was oral. He had the stubs of his checks, but the checks were thrown away. Throwing away returned checks is not uncommon with honest people. It is claimed that he was living in the back of a small shop, and that his facilities and financial ability rendered it impossible for him to go forward with the work and extend the credit claimed. This may be worthy of consideration; but I see no reason for condemning a man in humble circumstances and with limited opportunities, where there is no indication of any fraud except what is inferable from such conditions. Sensibility to fraud is a judicial virtue; but impressions of that nature, however acute, are not the equivalent of intellectual conviction based upon facts that logically induce such judgment. It is likewise just to use caution lest the intent and devices of a harassed or failing creditor color impressions of the actions and motives of those who deal with him. Grossman had a legal right to buy at a bargain, at even a very inadequate price. The vendor's improvidence in selling of itself does not accuse his vendee. In the depression of 1908 properties lost much of their earlier and, it may be, sounder values, and the court cannot be so blind to the general stagnation and financial distress as to be persuaded that the property in question did not suffer. It is not beyond belief that Gallin found himself driven to the sacrifice made by him.

It is quite a prevalent idea that payment to relatives or near friends of alleged indebtedness by a person in failing circumstances justifies an inference of fraud. Such acts require grave scrutiny, but there is no legal objection to the payment to Goldfisch if he was a creditor. Brothers-in-law, even though humble in means and limited in finances, are entitled to payment of their just debts. And what is the evidence that Goldfisch was not an honest creditor? Gallin states that he was; but, disregarding Gallin, Goldfisch so testifies. There is no evidence to the contrary. There are sundry small facts that were doubtless deemed probatively stronger than this evidence; for instance, the relationship, the scanty equipment and meager finances of Goldfisch, the absence of a written contract, and the destruction of his checks. But no one of these things is in fact strange or inconsistent with honesty. The plumbing of No. 13 Moore street was a considerable undertaking. If Goldfisch did not do it, if he did not buy the material, if he did not pay the bills, if he did not employ the laborers and oversee or do the work, it seems possible to make some proof thereof. There is no evidence to dispute him in that regard. If he did the work, he was entitled to his pay, and the payment through the Grossman mortgage would be legitimate.

I think that as to Grossman and Goldfisch there should be a new trial, when perchance a more thorough investigation may dispel the distrust that arose in the mind of the court or afford a more sufficient basis therefor.

It further appears that on March 19, 1908, Gallin and his wife conveyed to Max Gallin 185a Vernon avenue for the stated consideration of $1, subject to all mortgage liens now on the premises, and that on April 27, 1908, Max Gallin conveyed the same premises to his mother, Annie Gallin, for the same consideration, subject to mortgages aggregating $5,500, and that she on April 30, 1908, conveyed the same premises to Jacob Joblons so as to realize $1,200 over and above the mortgages. The decree provided that the defendant Annie Gallin account to the plaintiff for the sum of $1,200 and interest from May 1, 1908, the proceeds of the sale of the said premises. Annie Gallin testified that she furnished the money for the purchase of the premises by her husband; that she had saved it, having been always in business; but there is no evidence when or in what manner it was done. The evidence is that the contract for the purchase of the premises was made in the husband's name, and that he paid the consideration. I think that the decree as to her should not be disturbed.

The court made an additional allowance of 5 per cent. on $24,200, to wit, $17,000 equity in 13 Moore street, $6,000 equity in 17 Moore street, and $1,200 proceeds of the sale of 185a Vernon avenue, the allowances to be included in the bill of costs to be taxed herein. The judgment proceeds against all the defendants. There should be a decree for costs against Annie Gallin, and the additional allowance of $60, and as to her, Samuel Gallin, and Max Gallin the judgment should be affirmed, with costs.

The judgment should be reversed as to the Grossmans and Goldfisch, costs to abide the final award of costs, and affirmed as to the other appellants, with costs. All concur.